UNITED STATES DISTRCIT COURT
WESTERN DISTRICT OF WISCONSIN

_____

ALEXIS DUCKETT, KRYSTYNA ELLEW,
MARY FERRITO, TESSA GRADY, TARA STAUFFACHER,
TESSA TOWERS

        Plaintiffs,

        vs.                             Case No. 25-cv-684

THE BOARD OF REGENTS OF
THE UNIVERSITY OF WISCONSIN SYSTEMS
JUSTIN DOHERTY, MARISA MOSELEY

        Defendants,

_____

PLAINTIFFS' RESPONSE TO DEFENDENTS' MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT

_____

**DOLAN LAW OFFICES, P.C.**
*Electronically Signed by Martin A. Dolan*
Martin A. Dolan
10 South LaSalle Street, Suite 3702
Chicago, Illinois 60603
(312)676-7600
mdolan@dolanlegal.com

**FUHRMAN & DODGE, S.C.**
*Electronically Signed by Noe. J Rincon*
Noe J. Rincon
State Bar No. 1124893
Christopher J. Dodge
State Bar No. 1011530
Jeanne M. Armstrong
State Bar No. 1021451
Fuhrman & Dodge S.C.
6405 Century Ave. Ste. 101
Middleton, WI 53562
Phone: 608-327-4200
nrincon@fuhrmandodge.com
cdodge@fuhrmandodge.com
jarmstrong@fuhrmandodge.com

*Counsel for Plaintiffs*

Table of Contents

I.   INTRODUCTION………………………………………………………………....1

II.  LEGAL STANDARD………………………………………………………..3

III. ALEXIS DUCKETT AND TARA STAUFFACHER'S CLAIMS ARE NOT UNTIMELY
     ON THE FACE OF THE COMPLAINT, SO DISMISSAL IS IMPROPER……………..4

     A.  The Complaint is Not Untimely on its Face…………………………………………..5

     B.  Defendants' Timeliness Argument Requires Concocting an Inference in Defendants'
         Favor…………………………………………………………………………………6

     C.  While Premature at the Pleadings, Plaintiffs' Allegations Support Application of the
         Continuing Violation Doctrine………………...……………………………………7

IV.  PLAINTIFFS PLAUSIBLY ALLEGE SUBSTANTIVE DUE PROCESS VIOLATIONS,
     AND DEFENDANTS ARE NOT ENTITLED TO QUALIFIED
     IMMUNITY…………………………………………………….…..……………………..11

     A.  Plaintiffs Plausibly Allege Violations Of A Constitutional Interest Clearly Recognized
         By The Seventh Circuit…...…………………………………….…………….11

     B.  Plaintiffs Plausibly Allege That Defendants' Conduct Was Arbitrary and Conscience-
         Shocking……………………………………………………………………...….12

     C.  Plaintiffs' Allegations Preclude Dismissal Based On Qualified Immunity…………14

V.   PLAINTIFFS STATE A CLAIM FOR FIRST AMENDMENT VIOLATION….………...15

     A.  Plaintiffs Have Stated A First Amendment Claim Because They Engaged In Protected
         Speech And Were Retaliated Against Because Of That Speech, And Because The
         Speech Was A Motivating Factor in Defendants' Retaliatory Acts…………………..15

         1.  Plaintiffs Engaged in Protected Speech and Expressive Activity………………..15

         2.  Defendant Moseley Retaliated Against Plaintiffs For Their Speech…………......17

         3.  The Speech Was A Motivating Factor In The Retaliatory Conduct……...……....20

     B.  Should the Court Add a "Public Concern" Requirement as a Precondition on the
         Protected Nature of Student-Athlete Speech, Plaintiffs' Speech is Still
         Protected…………………………………………………………………………...…..21

     C.  Plaintiffs State a Claim For Impermissibly State-Compelled Speech……………...23

     D.  Qualified Immunity Is Inappropriate. ………………………………………...……24

VI.  PLAINTIFFS STATE AN EQUAL PROTECTION CLAIM…………………………....26

     A.  Rational Basis Review Is Not A Rubber Stamp For Disability-Based
         Discrimination………………………………………………………………………...27

     B.  Plaintiffs' Allegations Satisfy Each Element Required To Move Their Equal
         Protection Claim Beyond the
         Pleadings……………………………………………………………………..……28

         1.  Plaintiffs Allege that Moseley and Doherty Treated Them Differently Because of
             their Disabilities or Perceived Disabilities……..…………………………….28

         2.  Plaintiffs Allege That Defendants' Conduct Was Not Rationally Related To A
             Legitimate State Interest..………………………………………………….....30

   C.  Plaintiffs' Equal Protection Claim is Not a Repackaged ADA/Rehabilitation Act Claim…………………………………………………………………………………33

   D.  Defendants Are Not Entitled To Qualified Immunity……………………………...33

VII. PLAINTIFFS STATE ADA CLAIMS, AND DEFENDANTS' SOVEREIGN IMMUNITY ARGUMENTS ARE PREMATURE AT THE PLEADING STAGE………………………………………………...…………………………......34

   A.  Plaintiffs Plausibly Allege Discrimination And Failure To Accommodate Claims…...34

   B.  The Issues Of Abrogation And Applicability Of United States v. Georgia Are Premature At This Stage…………………………………………………….….…36

VIII. PLAINTIFFS STATE A CLAIM UNDER SECTION 504 OF THE REHABILITATION ACT…………………………………………………………………………………....…37

   **A.**  Defendants' Rule 12 Challenges To The Rehabilitation Act Claim Fail……………37

      **1.**  Governing Section 504 Framework…………………………………………37

      **2.**  The First Amended Complaint Pleads Plaintiff-Specific Disabilities and Defendants' Knowledge………………………………………………………38

         **a.**  The FAC Pleads Qualifying Disabilities Through Impairment, Treatment, and Functional Limitation………………………………………………...39

         **b.**  The FAC Pleads Defendants' Knowledge Through Disclosure And Obviousness……………………………………………………………39

         **c.**  Plaintiff-specific Allegations On Firm Disability And Knowledge Are Adequately Pleaded………………………………….…………………40

         **d.**  Defendants' Rule 8 Authorities Do Not Fit The Pleaded Facts…..……40

      **3.**  Plaintiffs Plausibly Allege a Disparate Impact Claim Under the Rehabilitation Act………………………………………………………………………....…..41

         **a.**  The First Amended Complaint Alleges Program-Wide Practices, Not Isolated Discretionary Acts……….……………………………………...41

         **b.**  The First Amended Complaint Identifies A Facially Neutral Practice Sufficient At The Pleading Stage…...………………………………….43

         **c.**  Defendants Improperly Demand Statistical Proof at Rule 12……..……43

         **d.**  Defendants' Authorities Are Distinguishable From The Practices Alleged Here………...…………………………………………………………44

      **4.**  Defendants' Argument As To Damages Is Irrelevant To A Motion to Dismiss………………………………………………………………………45

IX. PLAINTIFFS PLEAD DOHERTY'S PERSONAL INVOLVEMENT……………..……46

   A.  Defendants Misstate The Rule 12 Standard Governing Personal Involvement……...46

   B.  The Complaint Pleads Extensive, Non-Conclusory Facts Establishing Doherty's Personal Involvement…...……………………………………………………….....46

   C.  Plaintiffs Adequately Plead an Equal Protection Claim As to Doherty…………..…48

      1.  Defendants Misstate the Equal Protection Pleading Standard…………….……..48

2. The Complaint Plausibly Alleges Disability-Based Differential Treatment and Deliberate Indifference by Doherty…………..…………………………………………..49

D. Plaintiffs Adequately Plead A Substantive Due Process Claim………..……………..51

1. Defendants Misstate The Rule 12 Inquiry And Recast A Fact-Bound Standard A Pleading Bar….………………….........................................................................51

2. The Complaint Plausibly Alleges Executive Action Marked by Deliberate Indifference to Serious Harm…………...………………………………………...52

E. Doherty Is Not Entitled To Qualified Immunity.……………………………………..53

1. Defendants Misstate The Qualified Immunity Inquiry At Rule 12………………53

2. The Complaint Plausibly Alleges Violations of Clearly Established Constitutional Rights……………...……………………………….………………………...54

X. CONCLUSION………………………………………………………………………...55

## I.    <u>INTRODUCTION</u>

Defendants' Motion rests on a simple demand: believe us. Believe us because we are a university and a coach. Believe us even though this is not the stage for facts, credibility, or explanations—and even though the First Amended Complaint (hereinafter "FAC" or "Complaint") alleges the opposite.

From that premise, the rest follows easily. Defendants take a well-pleaded complaint, strip it of context, and replace it with a kinder story—a "hero's tale." Then, they ask the Court to dismiss the case based on their rewrite. On their telling, this case is about a college women's basketball coach who led a difficult team and faced hard calls. Everything she did was for her players' own good. She had no choice but to "manage" her players' mental health challenges—indeed, it was her responsibility to "save their lives." And the University and its administrators—they lauded and supported her valiant efforts.

That story may come from somewhere. It does not come from the Complaint. In the Complaint, Plaintiffs describe a sustained course of coercion, control, retaliation, disability-based discrimination, and institutional indifference—state actors exercising their power over student-athletes' bodies, education, and futures.

Defendants do not accept those allegations as true. Instead, they strip the allegations of context and replace them with a gentler narrative: coercion becomes "urging," confinement becomes "privacy," punishment becomes "support," and a sustained course of misconduct becomes a flurry of well-intentioned choices by a "heroic" coach doing her best to support a struggling team. But this is not the time for dueling narratives. It is the time to accept the well-pleaded allegations as true, construe all reasonable inferences in Plaintiffs' favor, and decide whether Plaintiffs have stated claims for relief. They have.

This brief makes six points:

*First*, Defendants' statute of limitations argument requires the Court to supply facts that were not pleaded and to draw inferences in their favor to conclude that Defendants' misconduct ended when Alexis Duckett and Tara Stauffacher's seasons ended. But because Plaintiffs' allegations are not untimely on their face, the Court should not take the extraordinary step of granting a fact-intensive affirmative defense on a motion to dismiss.

*Second*, Plaintiffs state substantive due process claims because Plaintiffs describe not ordinary coaching decisions, but arbitrary, conscience-shocking abuse of power—coercive control over medical decisions, forced disclosures of private information, and deliberate indifference to known psychological harm.

*Third*, Plaintiffs state First Amendment claims. They detail protected speech and expressive conduct concerning mental health, safety, and institutional practices—met only with retaliation and coerced silence. In arguing that the speech at issue is unprotected, private, or valueless, Defendants ask the Court to adopt a standard that the Constitution does not recognize.

*Fourth*, Plaintiffs state equal protection violations by all Plaintiffs against both Moseley and Doherty. Specifically, Plaintiffs allege intentional disability-based disparate treatment through punishment, isolation, coercion, and ratification—without a rational basis. While Defendants cling to rational basis review, that standard is neither a rubber stamp for disability discrimination nor a license to ignore pleaded facts.

*Fifth*, Plaintiffs state ADA and Rehabilitation Act claims supported by detailed facts about qualifying disabilities, Defendants' knowledge, and exclusion from or unequal participation in a federally funded athletics program. Defendants' arguments about immunity and damages are premature at the pleadings.

***Finally***, Plaintiffs' allegations set forth Defendant Justin Doherty's personal involvement. The Complaint recounts his repeated notice, authority to intervene, and deliberate indifference to ongoing constitutional violations. That is not respondeat superior. It is participation.

Defendants ask the Court to choose a different story than what is in the Complaint. Rule 12 forbids that move. At this stage, allegations may not be sanitized, unpleaded facts may not be supplied, and the individual Defendants may not be given the benefit of the doubt simply because the case involves the world of college sports. Plaintiffs' allegations of coercion, retaliation, discrimination, and deliberate indifference by state actors abusing the power dynamics at play more than plausibly support their claims. This case should move beyond the pleadings, and Defendants' Motion should be denied.

## II.    LEGAL STANDARD

On a Rule 12(b)(6) motion, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiff[s]' favor." The only question is whether a complaint states, "'a claim to relief that is plausible on its face.'" *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when [a] plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 564-65 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Id.* at 565 (citing *Iqbal*, 556 U.S. at 678). The Seventh Circuit Court of Appeals has reinforced the understanding that it does not "expect, nor does Federal Rule of Civil Procedure 8 require, a plaintiff to plead information [he or] she could not access without discovery." *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 529 (7th Cir. 2015).

Motions to dismiss "will only be granted if no relief is available under any set of facts consistent with the complaint." *Status Sols., LLC v. JNL Techs., Inc.*, No. 20cv01119-WMC, 2021 WL 2860481, at *2 (W.D. Wis. July 8, 2021) (citing *Iqbal*, 556 U.S. at 679). As further explained in *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001):

> [T]he reason why judges accept a complaint's factual allegations when ruling on motions to dismiss under Rule 12(b)(6) is that a motion to dismiss tests the legal sufficiency of a pleading. Its *factual* sufficiency will be tested later – by a motion for summary judgment under Rule 56, and if necessary by trial.

### III.    ALEXIS DUCKETT AND TARA STAUFFACHER'S CLAIMS ARE NOT UNTIMELY ON THE FACE OF THE COMPLAINT, SO DISMISSAL IS IMPROPER.

Defendants want the Court to, as the Seventh Circuit calls it, "depart[] from orthodoxy" and dismiss Alexis Duckett and Tara Stauffacher's claims as untimely. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015). Their statute of limitations argument hinges on one assumption: that because Alexis Duckett and Tara Stauffacher's final basketball season ended in April 2022, and because the Complaint does not timestamp post-season events, no wrongful conduct occurred after the season ended. (*See generally* Defs' Mot. at pp. 5–7).

The Complaint does not say that. To make that assumption, Defendants ask the Court to do three things: (1) resolve a fact-intensive affirmative defense on a motion to dismiss, even though the Complaint is not untimely on its face; (2) infer, *in favor of Defendants*, that Defendants' misconduct ended when Alexis and Tara's basketball seasons ended; and (3) require Plaintiffs to plead around an affirmative defense to establish the continuing violation doctrine. The law requires none of those things.

### A.  The Complaint Is Not Untimely On Its Face.

4

Defendants ask the Court to do what the Seventh Circuit calls "rare"—grant an affirmative defense on a motion to dismiss. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004) (citation modified). "Dismissal based upon affirmative defenses" like the statute of limitations "is rare because 'these defenses typically turn on facts not before the court at this stage.'" *Elward v. Electrolux Home Prods., Inc.*, 264 F. Supp. 3d 877, 887 (N.D. Ill. 2017) (quoting *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012)).

Because dismissing a complaint as untimely is to "depart[] from orthodoxy," *Sidney Hillman Health Ctr.*, 782 F.3d at 928, Alexis and Tara's claims survive as long as the Court can "'imagine any scenario in which the Complaint was timely.'" *McGrath v. Dunecrest Condo. Ass'n*, 2023 WL 2865370, at *4 (N.D. Ind. Apr. 7, 2023) (quoting *United States v. Aniemeka*, 2021 WL 949344, at *5 (N.D. Ill. Mar. 12, 2021)).

So, what is the rare, unorthodox scenario justifying dismissal based on the statute of limitations? Dismissal is appropriate only where the complaint "unambiguously satisf[ies] the affirmative defense," *Lohrasbi v. Bd. of Trs. of Univ. of Ill.*, 2014 WL 12743795, at *6 (C.D. Ill. Feb. 6, 2014)—meaning "'***the allegations of the complaint itself*** set forth everything necessary to satisfy the affirmative defense.'" *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014) (emphasis added) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). In that scenario, "the plaintiff [] affirmatively plead[s] himself out of court." *Id.*; *see also Lohrasbi*, 2014 WL 12743795, at *6 (collecting cases finding that dismissal on the basis of timeliness to be inappropriate).

Briefly, a few examples of when this happens are useful:

- The plaintiff attaches to her complaint a document showing that she presented her FTCA claim to the appropriate federal agency (as required by the statute) five years

late. *Khan v. United States*, 2014 WL 4698738, at *1 (E.D. Wis. Sept. 18, 2014), *aff'd* 808 F.3d 1169 (7th Cir. 2015).

- The plaintiff admits in the complaint itself that he did not file the complaint on time after receiving the EEOC's Right to Sue letter. *Laslie v. Cicero*, 2021 WL 1853250, at *7 (N.D. Ill. May 10, 2021).

- The plaintiffs allege that they were aware of the injuries caused by the defendants' alleged conspiracy seven years before filing suit rendering the complaint "hopelessly time-barred." *Cancer Found., Inc. v. Cerberus Cap. Mgmt., L.P.*, 559 F.3d 671, 675 (7th Cir. 2009).

- The terms of plaintiff's disability insurance policy established the accrual date and filed her lawsuit roughly two years late. *Gallagher v. Unum Life Ins. Co.*, 2010 WL 11523580, at *1–2 (E.D. Wis. Feb. 22, 2010).

Here, there is nothing in Plaintiffs' allegations themselves unambiguously establishing that their claims are untimely. Indeed, Defendants do not argue otherwise. Instead, as discussed below, Defendants want the Court to reach an inference in their favor to support the rare step of granting their statute of limitations affirmative defense at the pleadings. The law does not allow such a result.

## B. Defendants' Timeliness Argument Requires Concocting An Inference In Defendants' Favor.

Defendants assert that dismissal on the pleadings is appropriate because the "Complaint conclusively establishes" that Alexis and Tara's claims are untimely. (Defs' Mot. at pp. 5–7). But their argument requires an extra step: assuming that, because the season ended in April 2022, and because Alexis and Tara do not spell out what happened next, all challenged conduct must have ended then, too.

*"[A] complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense."* *Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, 85 F. Supp. 3d 1007, 1009–10 (E.D. Wis. 2015). And construing unpled facts against Plaintiffs and in favor of Defendants to concoct an inference of untimeliness is far from the "the allegations of

6

the complaint itself set[ting] forth everything necessary to satisfy the affirmative defense." *Chicago Bldg. Design, P.C.*, 770 F.3d at 614.

Rather, "[a]s long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial)[.]" *Sidney Hillman Health Ctr.*, 782 F.3d at 928. The Complaint satisfies that standard. The Complaint alleges a course of retaliatory and coercive conduct, among other things, that forced Alexis and Tara out of the program and disrupted their educational and athletic careers that plausibly extended beyond their respective spring meetings with Doherty.

Defendants simply demand more than the law requires at this stage. "'Complaints need not contain *any* information about defenses and may not be dismissed for that omission.'" *T&M Farms v. CNH Indus. Am., LLC*, 2020 WL 1082768, at *5 (E.D. Wis. Mar. 5, 2020) (emphasis in original) (quoting *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004)). At most, Defendants raise a fact issue that cannot be resolved now. At bottom, an improper, defendant-friendly assumption that the close of Alexis and Tara's basketball season in 2022 brought an end to Defendants' misconduct does not justify departing from the orthodox rule against granting affirmative defenses on a motion to dismiss.

## C. While Premature At The Pleadings, Plaintiffs' Allegations Support Application Of The Continuing Violation Doctrine.

Finally, Defendants argue that Plaintiffs' allegations do not satisfy the continuing violation doctrine, so Alexis and Tara's claims are untimely. (Defs' Mot. at pp. 8–10). The continuing violation doctrine "provides generally . . . that where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease." *Buske*, 2009 WL 3010833, at *10 (collecting cases).

Defendants assert that Alexis and Tara allege only "discrete, independently actionable" events outside of the statute of limitations, so the doctrine does not apply. (*Id.*) The Court need not reach this question. "[A] plaintiff has no obligation to plead around affirmative defenses," so any alleged "failure to 'adequately' plead around a defense" by, for example, invoking an exception to the statute of limitations, "is not grounds for dismissal." *T&M Farms*, 2020 WL 1082768, at \*6 (rejecting defendant's argument that plaintiff "failed to adequately plead" a basis for equitable estoppel and refusing to dismiss complaint as untimely).

Just as courts in this Circuit rarely depart from the orthodox rule precluding dismissal based on untimeliness at the pleadings, it is even rarer for a court to dismiss a complaint because the allegations themselves do not establish a *defense* to a timeliness challenge. *See, e.g., Buske*, 2009 WL 3010833, at \*10 (collecting cases where the court declined to rule on the continuing violation doctrine on a motion to dismiss and noting "that there may be grounds" to apply the continuing violation doctrine but reserving that decision for a later time); *Fond Du Lac Bumper Exch.*, 85 F. Supp. 3d at 1009–10 (quoting *Reiser*, 380 F.3d at 1030) ("'Maybe the defendant itself has done something that warrants tolling. . . . It is best to await a final decision rather than leap into a subject that evidence may case in a new light.'").

In any event, even if the Court were to consider the continuing violation doctrine, the Complaint supports its application. To start, Defendants' claim that Plaintiffs failed to allege a violation within the limitations period (Defs' Mot. at pp. 9–13) requires the same assumption that Defendants' misconduct ended with the season. The Complaint does not say that—Defendants want the Court to draw that inference in their favor—something Rule 12(b)(6) does not permit.

Further, Plaintiffs allege far more than the "discrete, independently actionable acts" that Defendants describe. (*Id*. at p. 8). Defendants recast Plaintiffs' allegations as a short list of isolated

episodes—reduced playing time here, a meeting there—each apparently complete the moment it occurred. Again, that is not the Complaint. Plaintiffs allege a sustained pattern of retaliation, coercion, and institutional indifference, carried out by the same actors, through the same mechanisms, over time.

Without reciting each allegation here, Alexis alleges repeated and escalating conduct: invasive one-on-one meetings; retaliation when she attempted to set boundaries; increased scrutiny tied to her mental health; institutional involvement that reinforced, rather than stopped, the conduct; and interference with her medical discharge, ultimately depriving her of her scholarship and degree. (*See* FAC, ¶¶ 62–63, 66, 92–93, 94–95, 108–10, 128–29, 125–27, 129–34, 161). Similarly, Tara alleges an ongoing pattern of isolation and control, including orders to cut off contact with her parents, public ridicule for maintaining that relationship, and continued psychological pressuring causing severe emotional distress. (*Id.*, ¶¶ 62–66, 86–90, 108–10, 125–27, 129–34, 192).

Plaintiffs' allegations detail "a continuing and ongoing practice directed at each Plaintiff," with "[t]he last act evidencing this continuing practice fall[ing] within the statutory limitations period[.]" (*Id.*, ¶ 108). Defendants' conduct "constituted a systematic pattern [Defendants] repeated day after day and year after year." (*Id.*, ¶ 109). "Each instance of abuse and neglect was part of an unbroken sequence of events causing Plaintiffs to suffer severe emotional distress." (*Id.*). And "[a]t no point . . . was there a cessation or meaningful break in this pattern of behavior." (*Id.*, ¶ 110; *see also Id.*, ¶¶ 111–12). Plaintiffs' allegations more than support a plausible continuing violation theory.

Defendants' reliance on *Bernard v. Scott*, a prisoner civil rights case unnecessarily muddies the water. (Defs' Mot. at p. 8). *Bernard* does not limit the continuing violation doctrine to a narrow

category of "cumulative" harm. *Bernard v. Scott*, 501 F. Supp. 3d 611, 620–21 (N.D. Ill. 2020). It draws a simpler line. A single, completed act with lingering harm does not extend the statute of limitations. A continuing course of related misconduct does. 501 F. Supp. 3d at 620–621 (N.D. Ill. 2020). As discussed above, Plaintiffs allege the latter—a continuing course of related misconduct, including repeated acts of retaliation, isolation, interference, and institutional refusal to intervene, and together, operating as a single, ongoing practice.

The fact that some of Defendants' acts might have been actionable on their own does not break that sequence. *Bernard* allows claims to proceed where, as here, the misconduct did not all end at once. *Id.* at 622 (finding that "the alleged violation is one that continues until Defendants remedy the error or Plaintiff leaves their custody").

This Court takes the same approach. For example, the continuing violation doctrine applies to a discrimination claim "involv[ing] repeated acts of sexual harassment," or a medical negligence claim where the "entire course of conduct" is "viewed as a unitary episode rather than discrete acts." *See McDonough v. WESTconsin Credit Union*, 97 F. Supp. 3d 1040, 1044–47 (W.D. Wis. 2015), *on reconsideration*, 2015 WL 1326413 (W.D. Wis. Mar. 25, 2015) (citation modified) (summarizing the Court's approach to the continuing violation doctrine). Yet where "plaintiffs' alleged injuries flow from a single discrete act," rather than a "series of related events," the continuing violation doctrine does not apply. *See id.* Here, because this case involves a repeated injury, the statute of limitations for each plaintiff did not begin to run until the date of the last injury or the date the tortious acts ceased. *Buske*, 2009 WL 3010833, at *10

\* \* \*

In sum, the Complaint does not unambiguously establish that Alexis Duckett or Tara Stauffacher's claims are untimely on the face of the Complaint. Plaintiffs do not allege that

Defendants' misconduct ended when the 2021-22 season ended. Instead, Defendants ask the Court to make an assumption that works for them. At most, Defendants raise a fact issue. But because Plaintiffs do not plead themselves out of court, Defendants' statute of limitations affirmative defense cannot be resolved on a motion to dismiss.

IV.    **PLAINTIFFS PLAUSIBLY ALLEGE SUBSTANTIVE DUE PROCESS VIOLATIONS, AND DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.**

Applying the Rule 12(b)(6) standard, Plaintiffs plausibly allege: (1) that Defendants violated a recognized constitutional interest; (2) that Defendants did so through arbitrary and conscience-shocking conduct; and (3) that Defendants are not entitled to qualified immunity at this stage. The Court should therefore deny Defendants' motion to dismiss as to the Plaintiffs' Fourteenth Amendment claims.

### A. Plaintiffs Plausibly Allege Violations Of A Constitutional Interest Clearly Recognized By The Seventh Circuit.

Plaintiffs allege that Moseley, and Doherty by enabling Moseley's conduct, violated their constitutionally protected right to informational privacy by demanding and coercing disclosure of personal, romantic, familial, and confidential medical information. (*See FAC*, ¶¶ 145–48).

A substantive due process violation under Section 1 of the Fourteenth Amendment to the Constitution arises when "a defendant infringes the right to substantive due process when he [or she] deprives someone of a 'fundamental right or liberty,' then defendant's conduct is 'arbitrary and irrational,' and the conduct 'shocks' the conscience." *Nelson v. City of Chicago*, 992 F.3d 599, 604 (7th Cir. 2021).

The Seventh Circuit has long recognized a constitutional right to informational privacy, including a substantial privacy interest in medical, sexual, and other highly personal information. *See Denius v. Dunlap*, 209 F.3d 944, 955 (7th Cir. 2000) (citing *Whalen v. Roe*, 429 U.S. 589,

11

599–600 (1977)); *Pesce v. J Sterling Morton High Sch.*, 830 F.2d 789, 795 (7th Cir. 1987); *Nixon v. Administrator of General Servs.*, 433 U.S. 425, 465 (1977); *Schaill v. Tippecanoe County Sch. Corp.*, 864 F.2d 1309, 1322 n. 9 (7th Cir. 1989) (recognizing "a substantial privacy interest in the confidentiality of medical information"); *see also Anderson v. Romero*, 72 F.3d 518, 522 (7th Cir. 1995). The Seventh Circuit has gone on to reiterate that:

> The courts of appeals, including [the Seventh Circuit], have interpreted *Whalen* to recognize a constitutional right to the privacy of medical, sexual, financial, and perhaps other categories of highly personal information – information that most people are reluctant to disclose to strangers – and have held that the right is defeasible only upon proof of a strong public interest in access to or dissemination of the information.

*Wolfe v. Schaefer*, 619 F.3d 782, 785 (7th Cir. 2010) (citing *Denius v. Dunlap*, 209 F.3d 944, 955–58 (7th Cir. 2000)).

Plaintiffs allege that Defendants used their authority within the athletic department to coerce disclosure of their protected information. (*See* FAC, ¶¶ 144–45). The information sought by Defendants falls squarely within the scope of information that the Seventh Circuit has found to be protected from wanton disclosure. That information included Plaintiffs' medical and mental-health records, romantic relationships, and family matters. (*See* FAC, ¶¶ 57–63).

Plaintiffs further allege that Defendants lacked any legitimate governmental interest in accessing or disseminating this information. (*See* FAC, ¶¶ 77, 148-149). Defendants do not argue otherwise.

Plaintiffs have plainly alleged in their Complaint (1) intentional conduct by a state employee (2) devoid of any governmental interest (3) which violated an established, constitutionally recognized right to privacy as to the information disclosed.

**B. Plaintiffs Plausibly Allege That Defendants' Conduct Was Arbitrary and Conscience-Shocking.**

Plaintiffs also allege that Defendants' conduct was arbitrary and conscience-shocking. The Complaint describes not isolated misjudgments, but an abuse of state power unjustified by any legitimate governmental interest.

"A plaintiff must allege that the government violated a fundamental right or liberty." *Campos v. Cook Cty.*, 932 F.3d 972, 975 (7th Cir. 2019) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). "And that violation must have been arbitrary and irrational." *Campos*, 932 F.3d at 975 (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845). "The Due Process Clause of the Fourteenth Amendment was intended to prevent government from abusing [its] power, or employing it as an instrument of oppression." *Collins v. Harker Heights*, 503 U.S. 115, 126 (quoting *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 196 (1989)). "Conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849 (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

Whether "conduct shocks the conscience in a given case is a necessarily fact-bound inquiry." *King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 818 (7th Cir. 2007) (citing *Lewis*, 523 U.S. at 850; *Betts v. Brady*, 316 U.S. 455, 462 (1942)).

At the pleading stage, a plaintiff's complaint must simply allege "enough facts to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs allege that Defendants coerced disclosure of highly personal information without any legitimate governmental purpose. That alone supports an inference of arbitrary conduct. Plaintiffs further allege that Moseley routinely bullied, belittled, and intervened in Plaintiffs'

personal lives using that information. (*See* FAC, ¶¶ 57–80). These allegations describe an abuse of authority—especially considering the power dynamics making up collegiate athletics.

The Court may reasonably infer that Defendants intended to (1) inflict mental and emotional harm on the Plaintiffs, (2) exercise coercive control over Plaintiffs, and (3) abuse their roles as members of the athletic department to do so.

### C.  Plaintiffs' Allegations Preclude Dismissal Based On Qualified Immunity.

"Qualified immunity protects government officials" only if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Doe v. Gray*, 75 F.4th 710, 716 (7th Cir. 2023). "Because a qualified immunity defense so closely depends on the facts of the case, a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (internal quotations omitted). "[I]t is [a] defendant's conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness." *Reed*, 906 F.3d at 549 (internal quotations omitted).

Plaintiffs plausibly allege that Defendants violated a clearly established right to informational privacy—recognized by the Supreme Court and the Seventh Circuit for decades— by coercing Plaintiffs to disclose their private medical and personal information without any legitimate purpose. At a minimum, those allegations preclude dismissal on qualified immunity grounds.

Defendants rely upon *Doe v. Gray*, 75 F.4th 710 (7th Cir. 2023) to make their qualified immunity argument. But in *Gray*, as in many of the other cases discussed *supra*, the context in which the challenged disclosure was made mattered. *Gray*, 75 F.4th at 717. *Gray* concerned the disclosure of sexual preferences and gender identity during criminal or child welfare investigations. *Id*. While the Seventh Circuit acknowledged the right to informational privacy, the

right was not clearly established in the context of criminal or child welfare investigations. *See id.* Here, Plaintiffs allege coercive disclosures outside of any investigatory, regulatory, or child welfare context—facts that plausibly establish a violation of clearly established law. Because Plaintiffs demonstrate that the Defendants' conduct was arbitrary and conscience-shocking in the context in which they occurred, and the right at issue has been clearly established in this Circuit, dismissal based on qualified immunity would be premature.

## V.    PLAINTIFFS STATE A CLAIM FOR FIRST AMENDMENT VIOLATIONS.

Defendants' Motion to Dismiss asks for an exception to the constitution: when the speaker is a student-athlete, and the audience is a coach, the First Amendment does not apply. On that theory, a coach may compel speech, punish dissenters, and silence students—so long as the coach calls it "team culture" or "player development." To get there, Defendants bring in public employment law, which has no place here, and then conclude that Plaintiffs' speech and expressive acts have no First Amendment value.

The Court need not—and should not—change the school-speech doctrine. *Tinker v. Des Moines* contains the half-century-old rule: Student speech is protected absent a reasonable likelihood of material and substantial disruption. 393 U.S. 503, 509 (1969). Defendants do not (and cannot) plead disruption. On Plaintiffs' allegations, retaliation and compelled silence make up the only "disruptions." The First Amendment claims therefore survive.

### A. Plaintiffs Have Stated A First Amendment Claim Because They Engaged In Protected Speech And Were Retaliated Against Because Of That Speech, And Because The Speech Was A Motivating Factor In Defendants' Retaliatory Acts.

To state a claim for First Amendment retaliation, Plaintiffs must show (1) that they engaged in a protected First Amendment activity; (2) that they "suffered a deprivation that would likely deter First Amendment activity in the future"; and (3) causation—i.e., that the First Amendment

15

activity was "at least a motivating factor" in a Defendant's decision to take retaliatory action. *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 585 (7th Cir. 2021) (internal citations and quotations omitted). Here, Plaintiffs plausibly allege each element.

### 1. Plaintiffs Engaged in Protected Speech and Expressive Activity.

It is a bright-line constitutional rule that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969).

Under *Tinker*, a school may restrict student speech only where it can reasonably show that the speech would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school." *Id*. at 509. (citation modified). Courts apply that rule to extracurricular athletics, too. *See, e.g., T.V. v. Smith-Green Cmty. Sch. Corp.*, 807 F. Supp. 2d 767, 780–81 (N.D. Ind. 2011) (rejecting argument that because there is no right to participate in athletics, *Tinker*'s standard does not apply); *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 758 (9th Cir. 2006) (rejecting test akin to Defendants' proposed standard in favor of *Tinker* in student athlete speech case). Defendants themselves concede that *Tinker* governs school speech, including in university cases. (Defs' Mot. at p. 36).

Plaintiffs allege that they engaged in protected speech and expressive conduct about safety, mental health, and the treatment of teammates: calling emergency services and visiting teammates in the hospital; caring for players on the court; "air fiving" their parents; and by speaking or declining to speak during invasive team meetings; and resisting or questioning invasive medical authorizations. This is protected activity. Notably missing from the FAC, and from the Motion, is any suggestion of potential disruption. Instead of using the test that applies—because they

cannot—Defendants instead ask this Court to adopt a "public concern" requirement for student athletes.[1] (Defs' Mot. at p. 36). This is not the law.[2]

As a rule, *Tinker* protects student speech. There is no recognized First Amendment exception that would take this protection from Plaintiffs. *See Lim v. Trs. of Ind. Univ.*, 2001 U.S. Dist. LEXIS 24822, *41 (S.D. Ind. Dec. 4, 2001) ("Practically all speech by United States citizens is afforded some level of protection by the First Amendment"); *See Kyung Hye Yano v. City Colls. of Chi.*, No. 08 CV 4492, 2013 U.S. Dist. LEXIS 101121, at *21 (N.D. Ill. July 19, 2013) ("If speech is not unprotected—meaning it does not fall within one of the narrow exemptions carved out by the Supreme Court—then it is protected."). Defendants' idea that Plaintiffs shed their constitutional rights by playing basketball in Madison should fail.

### 2. Defendant Moseley Retaliated Against Plaintiffs for Their Speech

Retaliation includes conduct that would "deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2000) (citation modified). A plaintiff's persistence in engaging in expressive activity does not foreclose a retaliation claim. *Id.* at 646–47. And as this Court recently noted, the Seventh Circuit does not require "egregious" behavior to support a First Amendment retaliation claim. *Whalen v. MacKenzie*, 760 F. Supp. 3d 743, 752–53 (W.D. Wis. 2024).

---

[1] Defendants offer an exception to the general rule they propose—where the State's response is ""patently unreasonable," malicious, or outside the scope of a state actor's official duties. (Defs' Mot. at p. 36). Whether conduct is "patently unreasonable," malicious, or outside official duties is a fact-intensive inquiry— far more appropriate for resolution by a jury than a Rule 12(b)(6) Motion. In any event Plaintiffs have pled more than enough to satisfy even Defendants' flawed standard. Plaintiffs allege that Moseley retaliated with threats and emotional abuse when her players expressed themselves, that Moseley injected herself into mental health decisions despite not being a mental health professional, and that Defendants breached their duties to players through this course of conduct. Those allegations plausibly place Defendants' actions on the malicious end of unreasonable even under Defendants' own standard

[2] By making no argument as to substantial disruption, Defendants have waived the point. *Kowald v. Columbia Cty.*, No. 18-cv-582-jdp, 2019 U.S. Dist. LEXIS 50807, *9 (W.D. Wis. Mar 25, 2019) ("failure to develop argument in brief results in waiver") (citing *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018)).

"The question is whether the defendant's conduct is 'so trivial that a person of ordinary firmness would not be deterred.'" *Id*. (quoting *Pieczynski v. Duffy*, 875 F.2d 1331, 1333 (7th Cir. 1989)).

Plaintiffs allege that Moseley's consistent abuse, berating players, withdrawal of team benefits, and other coercive conduct, such as reducing Plaintiff Duckett's playing time and pressuring her into effectively forfeiting her scholarship, constituted retaliation. That easily clears the "ordinary firmness" bar. *Novoselsky v. Brown*, 822 F.3d 342, 356–57 (7th Cir. 2016). Institutions are entitled to a degree of control over speech by students in the university setting, but this control is not absolute. *Healy v. James*, 408 U.S. 169, 180, 189–90 (1972) (applying *Tinker* and noting that "state colleges and universities are not enclaves immune from the sweep of the First Amendment").[3] Far from being trivial, this conduct is consistent with the multiple courts in this Circuit who have held that retaliation is actionable in situations of "threat, coercion, or intimidation that punishment, sanction, or adverse regulatory action will immediately follow." *Novoselsky*, 822 F.3d at 356–57 (quoting *Hutchins v. Clarke*, 661 F.3d 947, 956–57 (7th Cir. 2011)).

Losing the ability to play one's chosen sport—and the accompanying benefits—would deter the average student. *Whalen*, 760 F. Supp. 3d at 752–53 ("[it] is reasonable to infer that losing the ability to play the student's chosen sport would deter the average student" from protected First Amendment activity). Plaintiffs, who in addition to profound emotional abuse, received threats to their playing time and even to their ability to attend school. Plaintiff Ferrito's future on the team, for example, was threatened because she contacted emergency services when a teammate was in a

---

[3] Crucially, *Healy* noted that a university can impose discipline where there are violations of campus rules that are *reasonable*. 408 U.S. at 189. That is not the fact pattern presented here.

severe mental health crisis. And other players received threats to playing time because they did not express themselves to Moseley's liking in intense team or one-on-one meetings.

In the Seventh Circuit, "an act of retaliation as trivial as failing to hold a birthday party" for an employee is proscribed by the First Amendment. *Id.* (citing *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 76 n.8 (1990)). Plaintiffs' allegations more than plausibly state retaliation.

Defendants' "coach's will is paramount" argument misstates *Lowery v. Euverard*, (Defs' Mot. at p. 33–35). *Lowery* involved disruption—the coach worried that a team-wide petition to remove an unpopular coach would disrupt team unity and educational goals. 497 F.3d 584, 585 (6th Cir. 2007). Defendants argue that, like in *Lowery*, Moseley's actions in response to Plaintiffs' speech and expressive activity were reasonable, legal, and justified rather than impermissibly retaliatory. "But that was not the [*Lowery*] court's holding. As the Court of Appeals for the Sixth Circuit recently explained, *Lowery* held that 'the students did not have a valid First Amendment claim *because the coach legitimately feared that the speech would disrupt the team's educational goals*.'" *Whalen*, 760 F. Supp. 3d at 751 n. 5 (citing *McElhaney v. Williams*, 81 F.4th 550, 557–59 (6th Cir. 2023)) (emphasis added). Not so here.

Plus, *Lowery* involved a petition to remove a coach the players did not like, *Id.* at 586–89, Plaintiffs allege nothing of the sort. That is why the Sixth Circuit upheld discipline there, and why it does not help Defendants here. Specifically, the *Lowery* court held that the petition could be expected to disrupt the team, *id.* at 596, and accordingly the state's response of dismissing players did not run afoul of the *Tinker* standard.[4] Here, Plaintiffs' speech would not be reasonably expected to cause similar disruption and accordingly could not be regulated in the same way. Calling

---

[4] To the extent that the *Lowery* Court's holding integrated the public concern standard governing public employee speech, this was, as the concurrence—and this Response—argues, misplaced. *See generally* 497 F.3d 584 (Gilman, J., Concurring).

emergency services for a teammate in crisis, and visiting that teammate in the hospital, only to be met with retaliation, is not disruptive. Wiping an injured player's eyelash or "air fiving" your parents before a game is not disruptive. Articulating concerns about compelled, invasive mental health authorizations, or declining to share intensely private information to a coach in one-on-one or team meetings, is not the same as organizing for that coach's ouster. Plaintiffs' speech cannot be said to be substantially and materially disruptive.

Plaintiffs plausibly allege retaliation that is far from trivial. While Defendants attempt to label Defendants' conduct as ordinary coaching or administration, those sorts of determinations involve questions of fact. Plaintiffs allege that Moseley and Doherty's retaliatory conduct was significant, including threats to playing time similar to those proscribed in *Whalen*, and Defendants may not contest these allegations at this stage. *See* FAC, Count II; *Whalen v. MacKenzie*, 760 F. Supp. 3d 743. The First Amendment does not require "egregious" conduct to satisfy retaliation, and Plaintiffs plausibly allege sufficiently significant conduct to state a claim. Dismissal is unwarranted on this ground.

### 3. The Speech Was a Motivating Factor in the Retaliatory Conduct.

While Defendants do not appear to challenge causation, it is worth noting that Plaintiffs satisfy this element, too. "[Retaliation] cases usually involve a defendant taking an adverse action against the plaintiff that appears unrelated to the alleged retaliatory reason ...." *Vang v. Mellenberger*, 780 F. Supp. 3d 804, 807 (W.D. Wis. 2025). On a retaliation claim, "[a]t the pleading stage, [Plaintiffs'] burden is low: they must 'plausibly explain what led [them] to believe [their] treatment was because of the protected activity.'" *Whalen*, 760 F. Supp. 3d at 753 (quoting *Dorsey v. Williams*, No. 21-1858, 2022 WL 337192, at *1 (7th Cir. Feb. 4, 2022)).

Here, Plaintiffs have made such a showing. The Complaint links specific expressive acts— seeking emergency help, supporting teammates, resisting forced disclosures—to specific threats

and punishments as a result.  And even if Defendants' actions were motivated by a desire to win games or properly manage a team, the result would be the same. "A single event can have multiple but-for causes." *See Malin v. Hospira, Inc.*, 762 F.3d 552, 562 (7th Cir. 2014)

### B.  Should The Court Add A "Public Concern" Requirement A Precondition On The Protected Nature Of Student-Athlete Speech, Plaintiffs' Speech Is Still Protected.

Student speech does not require a showing of "public concern." Defendants' proposed rule is from public employee cases and has no place here. But even if the Court were to consider Defendants' proposed standard, Plaintiffs' speech—about mental health crises, forced medical disclosures, and abuse in a major college athletics program—easily qualifies as speech on matters of public concern.

Plaintiffs' speech addressed player safety and mental health: emergency calls for a teammate in crisis; resistance to compelled, broad medical authorizations; and objections to invasive "team-building" disclosures about trauma and mental health. (*See* FAC, ¶¶ 53–54, 56–66, 77, 159–60).

Plaintiff Ferrito twice sought emergency services for a teammate in mental health crisis and later visited this player at a mental health facility, only to be punished by Moseley. (*See* FAC, ¶¶ 78-80). Plaintiff Ferrito also engaged in expressive conduct—caring for a teammate who had suffered a serious knee injury during a game—and received Moseley's ire for that choice, as well. (*See* FAC, ¶ 102).

Plaintiffs spoke about their mental health, their teammates' mental health, and mental health generally to Moseley, and were told that it was a "b******" subject and that what they were describing was "a made-up thing and not real." (*See* FAC, ¶ 92).  Moseley recognized that the nature of this speech was broader than basketball, at another instance telling players that she "didn't give a f*** what's going on outside of this gym." *Id.*

21

At the pleading stage, and on a limited record, these allegations suffice to demonstrate that the content of the speech related to a matter of "social or other concern to the public" and are of "general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 444 (2011) (internal citation and quotation omitted) (citation modified). The FAC also describes speech whose content is of legitimate news interest, further establishing this proposition. *Id*. at 453.[5]

Context also matters in evaluating the constitutional value of speech. *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011)*.* Plaintiffs allege a broader context— an "epidemic" of psychological abuse in college sports including within the University's own history, and increased risks in women's basketball. (*See* FAC, ¶¶ 1-7, 37–39). And the University's public handling of Moseley's departure, paired with statements about player well-being, establishes that these issues are not private squabbles. *See* FAC, ¶¶ 135-136; *see also Snyder*, 562 U.S. at 453 ("Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, *social, or other concern* to the community) (internal citation and quotation omitted) (emphasis added).

None of this suggests, then, that when a student speaks or is forced to speak to her coach, or to her teammate, or to emergency services, that she is doing so in a bubble, or that these actions are private in nature. Rather, student athletes like Plaintiffs are part of the fabric of a university and state, and their speech bears upon not just themselves, but also upon their teammates, fans, and the broader world.

When Plaintiff Ferrito, for example, called emergency services for a teammate suffering a mental health crisis, or brought clothes and a book to her teammate in a mental health facility, she

---

[5] Defendants cite *Cox v. Med. Coll. Of Wis. Inc.*, 651 F. Supp. 3d 965, 1016 to construe Plaintiffs' speech as private. (Def's Mot. at p. 31). But there is a critical distinction: the *Cox* plaintiffs did not, in fact, complain to the government. Instead, their complaints went to a private entity. *Id*. at 996, 1016.

was doing so in order to advocate not only for herself, but for others and the public, on a matter of significant social concern to both the University community. When students declined to or were forced to express themselves in invasive team meetings, or to sign authorizations related to the release of their private information, they were making expressive choices that impacted not only themselves. When players communicated aspects of their mental health to Defendant Moseley only to be told that they were talking about "a made-up thing" that was "b******," they of course were making protected expressive choices. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (non-movant receives "all possible inferences" on Rule 12(b)(6) motion).

At bottom, Defendants' "private speech" framing depends on rewriting the Complaint. Plaintiffs allege speech and conduct related to a public health and safety problem in college sports. And Defendants do not argue—nor could they—the risk of potential disruption.

### C.  Plaintiffs State A Claim For Impermissibly State-Compelled Speech

The government may not compel speech. *303 Creative LLC v. Elenis*, 600 U.S. 570, 586 (2023). The narrow exceptions raised by Defendants—a) incidental, logistical information; and b) "purely factual and uncontroversial information," particularly in the context of commercial speech, do not fit here. 600 U.S. at 596 (citing *Rumsfeld v. Forum for Academic & Institutional Rights*, 547 U.S. 47, 61–62 (2006) ("*FAIR*") and *Hurley v. Irish-American Gay*, 515 U.S. 557, 573 (1995)). The compelled release of private medical information, mental health information, and other categories of personal experience to an abusive coach is neither incidental and logistical nor commercial.

The authorization, fundamentally, forced the students to accede to Moseley's orientation towards matters of the mind: namely, that the entire topic is "b******" and "made-up." (*See* FAC, ¶ 92). It may at this stage be inferred that Plaintiffs Ellew and Towers, for example, were being "forced to accommodate" views objectionable to their own on the subjects of both their own mental

23

health and the subject of student-athlete mental health generally. *FAIR*, 547 U.S. at 63. This, as argued, is a matter of public concern and social significance. The same is true for the other Plaintiffs forced to bare their souls to Moseley in invasive meetings characterized primarily by the dire power imbalance between Moseley and her players, who were dependent on athletics to preserve, for example, scholarships and NIL access. Plaintiffs have stated a compelled speech claim.

### D.  Qualified Immunity Is Inappropriate.

Qualified immunity turns on (1) whether the defendant violated the plaintiff's constitutional rights and (2) whether the right at issue was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: 'The plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity.'" *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)). "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal. . . " *Jacobs*, 215 F.3d at 775 (Easterbrook, J., concurring).

And given that, as argued throughout this Response, Defendants in their Motion seek inferences that may not be made in their favor at the pleading stage, dismissal on this ground would practically be dismissal upon disputed facts. This is impermissible in the Seventh Circuit's qualified immunity jurisprudence. *See, e.g., Bayon v. Berkebile*, 29 F.4th 850, 856 (7th Cir. 2022) (factual disputes meant that "'a trial is required before a determination can be made [regarding] qualified immunity'") (quoting *Chelios v. Heavener*, 520 F.3d 678, 692 (7th Cir. 2008)).

In any event, the rights at issue are clearly established. The First Amendment prohibits retaliation for protected speech and compelled speech by state actors, including in public university

settings. *Healy v. James*, 408 U.S. 169, 180 (1972); *Barnette*, 319 U.S. at 624; *see also Whalen*, 760 F. Supp. 3d at 743. *See, e.g., McGill v. Bd. of Edu.*, 602 F.2d 774 (7th Cir. 1979); *Perry v. Sindermann*, 408 U.S. 593 (1972); *Beverly v. Watson*, No. 14-cv-4970, 2017 U.S. Dist. LEXIS 160330 (N.D. Ill. Sept. 29, 2017). Plaintiffs detail receiving threats to their playing time and team status, being punished for seeking emergency help, and being coerced to disclose private information. Reasonable officials would understand the line. Qualified immunity is not a basis for dismissal here. These principles apply whether Plaintiffs' expression took place on a sports team or elsewhere.

Briefly, Defendants' supporting cases do not change the standard at the pleadings. *See Radwan v. Manuel*, 55 F.4th 101–02, 106–09 (2d Cir. 2022); *Schaill v. Tippecanoe Cty. Sch. Dist.*, 864 F.2d 1309 (7th Cir. 1989). *Radwan* is a fact-dependent, summary judgment opinion on a fully developed factual record—including references to terms of scholarships, university codes of conduct, NCAA bylaws, and a team "contract" instituted by the coach—that formed a significant basis for that court's decision to discipline a player who made a *vulgar* gesture on national television. 55 F.4th at 106-109. We have no factual record or comparable facts. *Schaill* is not a First Amendment case, so it relied upon different legal standard, and additionally, was about compelled disclosure of urine for drug testing. This is not analogous to forced mental health disclosure because that area is not regulated in the same way the use of illegal and/or performance enhancing drugs are. 864 F.2d 1309.

Ultimately, Plaintiffs have pled a constitutional deprivation, and their right to be free from retaliation was clearly established. Merits dismissal on qualified immunity would be in error.

## VI.    PLAINTIFFS STATE AN EQUAL PROTECTION CLAIM.

Defendants tell a simple story: everything Coach Moseley did was for her players' own good. In their telling, the Complaint describes a coach "managing" her mentally ill players—a

"hero" who "kept her players alive." And Assistant Athletic Director Justin Doherty was just acting reasonably in responding to Moseley's efforts. Defendants offer one reading of the Complaint. The Complaint offers another.

As written, Plaintiffs allege that Moseley and Doherty, acting individually and together, intentionally singled out players with actual or perceived mental health disabilities and treated them differently because of those disabilities—through coercion, punishment, isolation, and control, without a rational basis for doing so. Plaintiffs describe not medical care, but control; not safety measures, but coercion; and not neutral oversight, but ratification.

Yet Defendants insist this is not enough and ask the Court to dismiss Plaintiffs' equal protection claim. The Court should deny that request for four reasons. ***First***, rational basis review is not a rubber stamp on disability discrimination. ***Second***, Plaintiffs allege facts satisfying each element of a disability-based equal protection claim and cast serious doubt on Defendants' "Moseley was a hero" justification because what is alleged is not appropriate care by qualified providers or ordinary coaching discretion, but repeated overreach into medical decisions, and coercion and punishment based on disability-related symptoms and behaviors. ***Third***, Plaintiffs' equal protection claim does not simply repackage their ADA and Rehabilitation Act claims. Those claims are about the University's failure to accommodate and provide equal access to a program; the equal protection claim is about intentional disability-based disparate treatment by individual state actors. Both may proceed.[6] ***Fourth***, Defendants are not entitled to qualified immunity.

At the pleadings, Plaintiffs must plead facts that, taken as true, plausibly rebut the presumption of rationality that attaches to Defendants' explanations and show that Defendants

_____

[6] Defendants also repeat their argument that Alexis Duckett's and Tara Stauffacher's claims are time-barred. (Defs' Mot. at p. 43). As discussed *supra*, those Plaintiffs' claims are timely, and dismissal based on Defendants' statute of limitations affirmative defense is inappropriate.

intentionally treated Plaintiffs differently because of their disability and that their differential treatment was not related to a legitimate state interest. Plaintiffs do just that.

### A. Rational Basis Review Is Not A Rubber Stamp For Disability-Based Discrimination.

Starting with the standard on which Defendants place so much weight, Plaintiffs agree that rational basis review applies to disability-based equal protection claims. But Defendants give rational basis review more work than it can do. According to Defendants, all they must do is offer a "conceivable" justification and win. But Seventh Circuit law does not go that far—especially at the pleading stage.

The Seventh Circuit, in *Wroblewski v. City of Washburn*, squares the "perplexing situation" of the Defendant-friendly rational basis review and the plaintiff-friendly pleading standard. The solution: "The rational basis standard . . . cannot defeat the plaintiff's benefit of the broad Rule 12(b)(6) standard.'" 965 F.2d 452, 459–60 (7th Cir. 1992). Rule 12(b)(6) "is procedural and simply allows the plaintiff to progress beyond the pleadings and obtain discovery." *Id*. On the other hand, the rational basis standard is the plaintiff's "ultimate" "substantive burden." *See id.* (citation modified). The "presumption of rationality" is real, but it is not so generous that well-pleaded facts can be ignored, or that competing inferences be drawn in the defendant's favor. Rather, Plaintiffs can "overcome the presumption" by alleging facts that, taken as true, plausibly suggest that Defendants' asserted justification "could not reasonably be conceived to be true." *See id*. (citation modified).

So, for example, the Seventh Circuit in *Wroblewski* affirmed dismissal—"not because the defendant's hypothetical conjectures automatically trumped the plaintiff's well-pleaded assertions" but because the plaintiffs failed to satisfy Rule 12(b)(6)'s pleading standard. *See Do Not Pass Go, LLC v. City of Rockford*, 748 F. Supp. 3d 589, 598–602 (N.D. Ill. 2024) (discussing

27

*Wroblewski* and explaining that a defendant cannot win at the pleadings by simply proposing any "hypothetical" justification).

This matters because Defendants rewrite Plaintiffs' well-pled equal protection allegations, by for example, softening threats to simple "urging," and turning an unqualified coach's medical control and coercion into admirable, "heroic" care. Defendants then use rational basis review to justify their revised, friendlier version of events. How could a coach caring for her struggling players not satisfy rational basis review? Again, that is not what the Complaint says. Rather, as explained below, Plaintiffs allege disability-based differential treatment with no rational basis.

**B. Plaintiffs' Allegations Satisfy Each Element Required To Move Their Equal Protection Claim Beyond the Pleadings.**

"To state a claim for violation of the Equal Protection Clause, Plaintiff[s] must allege that Defendants (1) 'intentionally treated [them] differently from others similarly situated; (2) this difference in treatment was caused by [Plaintiffs'] membership in the class to which [they] belong; and (3) this different treatment was not rationally related to a legitimate state interest.'" *Haney v. Pritzker*, 563 F. Supp. 3d 840, 866 (N.D. Ill. 2021) (quoting *Srail*, 588 F.3d at 943).

As set forth below, Plaintiffs' allegations satisfy each element.

**1. Plaintiffs Allege that Moseley and Doherty Treated Them Differently Because of their Disabilities or Perceived Disabilities.**

Briefly, while Defendants only halfway assert otherwise, Plaintiffs allege that Moseley and Doherty intentionally treated athletes experiencing actual or perceived mental health disabilities differently from other players through coercion and punishment because of their disabilities or perceived disabilities. Defendants:

- punished Plaintiffs with a disability or perceived disability for symptoms and behaviors for their disability or perceived disability (*See* FAC, ¶¶ 61–66, 72–76, 93–97, 118–23, 147–52);

- used Plaintiffs' disabilities or perceived disabilities to exert extreme control over players' movements, medical decisions, and relationships (*See* FAC, ¶¶ 67–71, 77–83, 98–104, 124–30, 153–59);

- pressured disabled players to release private medical information as a condition of remaining on the team (*See* FAC, ¶¶ 77–80, 105–10, 131–36, 160–65);

- punished and isolated players after disability-related episodes, including by discouraging or restricting teammates' support (*See* FAC, ¶¶ 72–76, 84–88, 111–15, 137–41, 166–70); and

- imposed heightened "behavioral" requirements and monitoring tied to disability-related conduct (*See* FAC, ¶¶ 89–92, 116–20, 142–46, 171–75).

Plaintiffs' allegations show that Defendants targeted them because of their disability or perceived disability and treated them differently on that basis. That is enough to satisfy the first element. Despite Defendants' halfhearted suggestion otherwise, the Seventh Circuit does not require a plaintiff "to identify specific examples of similarly situated persons in their complaint" to satisfy the first element. *Cox v. Med. Coll. of Wisconsin Inc.*, 651 F. Supp. 3d 965, 1014 (E.D. Wis. 2023), *dismissed sub nom. Cox v. Children's Hosp. & Health Sys., Inc.*, 2023 WL 5170313 (7th Cir. May 17, 2023), and *dismissed sub nom. Cox v. Barber*, 2023 WL 5198786 (7th Cir. July 6, 2023) (collecting cases).

Because Plaintiffs set forth facts of intentional and differential treatment based on their disabilities or perceived disabilities, Plaintiffs satisfy the first and second elements of their equal protection claim.

### 2. Plaintiffs Allege That Defendants' Conduct Was Not Rationally Related To A Legitimate State Interest.

Plaintiffs satisfy the third element—that Defendants' conduct was not rationally related to a legitimate state interest—so long as their allegations call into question that Defendants' "legitimate governmental purpose" was rationally related to "'the disparity of treatment'"

Plaintiffs suffered based on their disability. *Bozzi v. Cook Cnty. Sheriff's Off.*, 2024 WL 3226576, at *13 (N.D. Ill. June 28, 2024) (quoting *Srail*, 588 F.3d at 946–47). They do.

Defendants assert that Plaintiffs plead themselves out of their equal protection claim because the allegations themselves establish rationality: a coach and athletic director confronted mental health crises, tried to keep students safe, and made hard calls. Yet again, the Complaint says something much different. Plaintiffs allege that Moseley and Doherty—neither of whom is a licensed mental health provider—repeatedly stepped into roles belonging to therapists or doctors, coerced and threatened disabled players to get them to comply, and then punished and isolated the athletes whose disabilities made them vulnerable to that abuse and control.

A few examples establish that Plaintiffs' allegations are not as Defendants say:

Confinement and threats: Defendants describe Moseley's and Doherty's "urging" treatment and "supervising" athletes. Plaintiffs allege that Moseley confined a disabled player and threatened police involvement. Specifically, Moseley told Krystyna that she would call the police if she did not go to a mental health facility. (*See* FAC, ¶ 70). Moseley is not a qualified mental health provider. (*Id*.). Krystyna went because of Moseley's threats. (*See* FAC, ¶ 71). Neither Krystyna nor her mental health providers thought she needed to be there. (*Id*.). Krystyna left. (*Id*.). Moseley then took Krystyna to the women's locker room and placed her in the back room. (*Id*.). She put a sign on the door directing others to stay out. (*Id*.). Krystyna pleaded with Moseley that she felt trapped and wanted to leave. (*See* FAC, ¶ 72). Moseley kept Krystyna in that room for the majority of the day. (*Id*.). Krystyna was given two chairs to use as a bed. (*Id*.). Moseley threatened to call the police if she tried to leave. (*Id*.).

Medical releases: Defendants say that they "requested" Plaintiffs to sign medical releases, and that making that request was rational because those athletes were undergoing mental health

crises. Plaintiffs, however, call into question *who* did this and *how*: a coach and administrator using team status to pressure disclosure of sensitive medical information under threat of removal. College coaches should not be involved in presenting such agreements to students, the student's decision whether to sign, or placing conditions on that decision. (*See* FAC, ¶¶ 43, 77). Yet Moseley pressured Krystyna and Tessa Towers to sign the agreement threatening to remove them from the team if they refused. (*See* FAC, ¶¶ 77, 148). Defendants' "good, concerned coach" justification does not answer the problem that Plaintiffs allege.

Punishment and isolation: Defendants justify isolation as protecting the players' safety. But Plaintiffs allege Defendants did so punitively. Specifically, Tessa Towers alleges that Moseley viewed her ADHD as a burden, singled her out, grew frustrated with her ADHD-related symptoms, and yelled at her during practices for the same. (*See* FAC, ¶ 86). Then, when Tessa was hospitalized following self-harm incidents, Moseley punished Tessa by isolating her and threatening players not to support her or visit her in the mental health treatment facility. (*See* FAC, ¶ 88). Moseley further punished Tessa for her mental health episodes and symptoms by placing her on a stringent 3 Strikes plan under which even minor mistakes like submitting a document a day late, resulted in a strike and threatened her place on the team. (*See* FAC, ¶ 89). Tessa's mental health providers opposed the strategy and found it harmful to Tessa. (*Id*.). Moseley told Tessa living with that anxiety was good for her. (*Id*.) Moseley also expressed negative views concerning Tessa's disability to Tessa's girlfriend's coach, who then echoed those "concerns" to Tessa's girlfriend. (*See* FAC, ¶ 187).

Additionally, Moseley prohibited Tessa Towers and Krystyna Ellew from attending a trip despite her therapists' disagreement and then proceeded to question Tessa relentlessly about how that decision made her feel and whether she was angry with her about it. (*See* FAC, ¶ 90). Moseley

31

scheduled a meeting with Tessa Grady, whom she perceived as disabled, and told her, off-handedly, that she should get tested for ADHD when Tessa was already working with a learning specialist and simply struggling with her transition to college courses. (*See* FAC, ¶ 91).

There is no rational basis for a college basketball coach to unilaterally decide to trap a student experiencing a mental health event in the locker room and threatening police involvement. Defendants can justify Moseley's actions as stemming from concern, but unilaterally trapping a student in the locker room for a day is not rationally related to such a concern.

There is no rational basis for a college coach or athletic director to pressure disabled athletes to sign medical releases and threatening removal from the team. Monitoring or "good coaching," again, does not have a rational relationship to the coercive manner in which Defendants secured these releases.

There is no rational basis for a college coach or athletic director to target, abuse, single out, and punish student athletes because of their disabilities or perceived disabilities. That is true regardless of any justification that Defendants float.

\* \* \*

Because Plaintiffs allege facts establishing each element to a disability-based equal protection claim, and because Plaintiffs' well-pled facts overcome the presumption of rationality, Plaintiffs' equal protection claim survives.

## C. Plaintiffs' Equal Protection Claim Is Not A Repackaged ADA/Rehabilitation Act Claim.

Briefly, Defendants make a separate, undeveloped attempt at dismissal. Defendants assert, "Plaintiff's equal protection claims must be dismissed to the extent they simply restyle their ADA and Rehabilitation Act Claims." (Defs' Mot. at p. 43-44). Defendants do not move the argument any further or even accuse Plaintiffs of doing so. In any event, the argument can be dealt with in

short order. Plaintiffs' equal protection claim is about individual state actors intentionally discriminating against disabled athletes. (*See* FAC, ¶ 178). The ADA and Rehabilitation Act claims are about access—the University, a public entity, failed to reasonably accommodate disabled athletes and denied student-athletes equal participation in its athletic program. (See FAC, ¶¶ 208–09, 234–35, 240). Each claim belongs in the Complaint. *See, e.g., Leibas v. Dart*, 2020 WL 6134992, at * 6 (N.D. Ill. Oct. 19, 2020) ("Plaintiffs are not using Section 1983 to enforce the ADA; they are instead asserting Equal Protection claims based on alleged differential treatment because of their status as disabled persons.").

### D. Defendants Are Not Entitled To Qualified Immunity.

Finally, Defendants' qualified immunity argument rises and falls with their faulty characterization of Defendants' conduct as reasonable. As explained, Plaintiffs allege intentional, disability-based disparate treatment through coercion and punishment. Since at least *City of Cleburne*, irrational disability-based discrimination by state actors violates the Equal Protection clause. *See City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985).

\* \* \*

To summarize, Defendants attempt to rewrite Plaintiffs' equal protection allegations and then use rational basis review to justify their invented, friendly, actions. That attempt should be rejected.

### VII. PLAINTIFFS STATE ADA CLAIMS, AND DEFENDANTS' SOVEREIGN IMMUNITY ARGUMENTS ARE PREMATURE AT THE PLEADING STAGE.

### A. Plaintiffs Plausibly Allege Discrimination And Failure To Accommodate Claims.

Plaintiffs plausibly allege discrimination and failure to accommodate claims based on the plain statements set forth in the Amended Complaint.

Federal Rule of Civil Procedure 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiffs are not required to prove discrimination or anticipate defenses. Instead, they must plausibly allege disability, Defendants' knowledge, and disability-based exclusion, discrimination, or failure to accommodate. Plaintiffs have done so.

Title II of the Americans with Disabilities Act ("ADA") prohibits a public entity from excluding a "qualified individual with a disability" "from participation in," or denying the benefits of, services, programs or activities of a public entity," by reason of disability, or discriminating against such an individual. 42 U.S.C. § 12132. Discrimination may be shown through intentional discrimination, including deliberate indifference, or refusal to provide a reasonable accommodation. *See CTL v. Ashland Sch. Dist.*, 743 F.3d 524, 528–29 (7th Cir. 2014). A prima facie case of intentional discrimination can be established by a "'showing of deliberate indifference,' which requires 'both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Lacy v. Cook Cty.*, 897 F.3d 847, 863 (7th Cir. 2018). The Seventh Circuit has rejected a higher standard for proving intentional discrimination. *Id*. A plaintiff falls within the scope of the ADA's definition of "disability" by showing "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

Defendants seek dismissal of all of Plaintiffs' ADA claims by recharacterizing Plaintiffs' allegations and demanding evidence that is not required by Rule 8. Plaintiffs allege that Defendants punished, excluded, and controlled student athletes because of actual or perceived mental health disabilities—conduct that plausibly states ADA claims. As to Plaintiff Ferrito, Defendants argue that Ferrito did not allege an adverse action because of her disability or that she required an

accommodation. Yet Plaintiff Ferrito alleges that Defendants caused her to develop disabling anxiety, panic attacks, and insomnia requiring treatment. She was excluded from participating in athletics and told she would never play. (*See* FAC, ¶¶ 5, 102–04). Those allegations plead disability, knowledge, and adverse action connected to disability.

Defendants' reliance on *Palmer v. Circuit Court of Cook County, Ill.*, is misplaced. Unlike in *Palmer*, Plaintiffs allege intentional conduct that created and then punished the disability. *See* 117 F.3d 351, 352 (7th Cir. 1997) (distinguishing "between the nondisabling trigger of a disabling mental illness and the mental illness itself)"

The same is true for Plaintiffs Towers and Ellew. They allege diagnosed or treated mental health impairments, and discipline related to their disability, along with exclusion, and coercive treatment. (*See* FAC, ¶¶ 5, 70; 76; 84-87; 90-92; 114).

Plaintiffs plausibly allege that Defendants targeted Plaintiffs based on actual or perceived mental health impairments and subjected them to exclusion, discipline, and coercive control because of those impairments. Given the fact-intensive and context dependent nature of ADA claims, dismissal at this stage without the opportunity for discovery would be premature.

## B. The Issues Of Abrogation And Applicability Of United States v. Georgia Are Premature At This Stage.

"[The ADA] provides that '[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or state court of competent jurisdiction for a violation of [the ADA]. *United States v. Georgia*, 546 U.S. 151, 153 (2006) (citing 42 U.S.C. § 12202). The Court provided a framework for how lower courts should approach the analysis for determining whether Congress had validly abrogated sovereign immunity under Title II of the ADA given a particular set of facts:

(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) in so far as such misconduct

violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Georgia*, 546 U.S. at 159. This analysis is to occur on a claim-by-claim basis. *Id.*

The United States Supreme Court further stated that it has "accepted this latter statement as an unequivocal expression of Congress's intent to abrogate state sovereign immunity." *Georgia*, 546 U.S. at 153 (citing *Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363–64 (2001)). Furthermore, the Court held that Title II of the ADA "validly abrogates state sovereign immunity insofar as it creates a private cause of action for damages against States for conduct that violates the Constitution." *Id.* at 159.

Plaintiffs plausibly allege conduct that independently violates the Fourteenth Amendment, including substantive due process violations of their right to privacy as to their personal and confidential medical information and Equal Protection violations. (*See* FAC, ¶¶ 141–55, 175–200). Under *Georgia*, such allegations are enough to defeat sovereign immunity. 546 U.S. at 159. Whether Defendants ultimately violated the Constitution is a merits question—not one to be answered now.

## VIII.   PLAINTIFFS STATE A CLAIM UNDER SECTION 504 OF THE REHABILITATION ACT.

Defendants ask the Court to dismiss Plaintiffs' Rehabilitation Act claim by recharacterizing the Complaint and asking for proof that is not required. Plaintiffs allege disability-based discrimination within a federally funded athletics program. That is enough at this stage. The claim proceeds.

### A.  Defendants' Rule 12 Challenges To The Rehabilitation Act Claim Fail.

At this stage, the Court must accept the pleaded facts as true and draw reasonable inferences in Plaintiffs' favor. Defendants may not recharacterize those facts or insist on evidence proving

causation or intent. Plaintiffs allege qualifying disabilities, Defendants' knowledge of those disabilities, and disability-linked exclusion and adverse treatment within a federally funded athletics program. Plaintiffs further allege program-level participation and discipline practices that operated in a predictable manner to burden disabled athletes, supporting both disparate treatment and disparate impact theories under Section 504.

### 1.  Governing Section 504 Framework.

Section 504 of the Rehabilitation Act provides, in relevant part, that no otherwise qualified individual with a disability may, solely by reason of that disability, be excluded from participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a). To state a claim, Plaintiffs must plausibly allege: (1) they are qualified individuals with disabilities; (2) Defendants receive federal financial assistance; and (3) they were excluded from participation in, denied the benefits of, or otherwise discriminated against in a covered program or activity solely by reason of disability. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012).

In the Seventh Circuit, claims under Section 504 and Title II of the ADA are analyzed under the same substantive framework, with the phrase "solely by reason of" supplying the applicable causation standard under the Rehabilitation Act. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). At the pleading stage, that causation language does not permit courts to screen claims based on competing factual narratives or hypothesized non-discriminatory motives. The inquiry is whether the facts alleged, taken as true, plausibly support the inference that disability was the reason for which Plaintiffs were excluded from participation, denied program benefits, or subjected to adverse treatment.[7]

---

[7] *See Wagoner*, 778 F.3d at 592.

### 2. The First Amended Complaint Pleads Plaintiff-Specific Disabilities and Defendants' Knowledge.

Defendants' Rule 8 argument calls Plaintiffs' disabilities "symptoms," calls Defendants' knowledge "unclear," and demands more detail than required. Defendants' plaintiff-by-plaintiff parsing ignores what the Complaint actually alleges and requires defendant-friendly inferences. For example, Defendants contend that Plaintiff Ferrito alleges only emotional distress caused by Moseley, that Plaintiff Grady alleges only a suggestion to test for ADHD coupled with anxiety and insomnia, and that Plaintiffs Towers and Ellew allege symptoms Defendants characterize as insufficient as a matter of law. (Defs' Mot. at pp. 72–73).

But Plaintiffs plead concrete impairments, treatment, functional limitations, and facts showing disclosure or obviousness sufficient to allege both disability and knowledge under Section 504. Plaintiffs also describe how those impairments affected major life activities, how University personnel learned of them, and how Plaintiffs were excluded or punished in ways tied to their disabilities. (*See* FAC, ¶¶ 8–10, 37–49, 51–56, 64–90, 101, 118–124, 170–210). These allegations satisfy Rule 8 and plausibly plead the disability and knowledge elements of a Rehabilitation Act claim. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) (explaining that a plaintiff states a Section 504 claim by plausibly alleging disability and denial of benefits, without heightened evidentiary detail at the pleading stage).

### a. The FAC Pleads Qualifying Disabilities Through Impairment, Treatment, and Functional Limitation.

Defendants' assertion that Plaintiffs plead only symptoms that "fall short" of a disability (Defs' Mot. at pp. 72–73) ignores what the Complaint pleads: diagnosed or treated conditions, including ADHD, panic attacks, anxiety, insomnia, depression, and concussion-related impairments, and ties those conditions to limitations in concentration, sleep, emotional regulation,

physical health, and athletic participation. (*See* FAC, ¶¶ 37–49, 83, 101, 170–210). Moreover, Plaintiffs allege medication and therapy and that these conditions were persistent, not fleeting reactions to isolated events. (*See* FAC, ¶¶ 47–48, 83, 101, 185–91). At the pleading stage, such allegations are sufficient to allege a qualifying disability. *Jaros*, 684 F.3d at 672.

### b. The FAC Pleads Defendants' Knowledge Through Disclosure and Obviousness.

Plaintiffs also plead knowledge. Defendants also argue Plaintiffs fail to allege Defendants' awareness of any disability or need for accommodation. (Defs' Mot. at pp. 72–73). But the Complaint alleges otherwise. It describes disclosures to coaching staff and administrators, meetings and communications regarding mental and physical health, observable symptoms, and treatment known to University personnel with authority over participation, discipline, and access to team benefits. (*See* FAC, ¶¶ 51–56, 76, 83–90, 118–30). Where, as here, Plaintiffs plead that disabilities were disclosed to or obvious to decision-makers, knowledge is plausibly alleged. *See Gratzl v. Office of the Chief Judges*, 601 F.3d 674, 678 n.2 (7th Cir. 2010) (recognizing that knowledge may be adequately pleaded where the disability and need for accommodation were known or obvious to those with decision-making authority).

### c. Plaintiff-specific Allegations Confirm Disability And Knowledge Are Adequately Pleaded.

- **Tessa Towers.** diagnosed ADHD disclosed to the University; University-directed medication changes; disability-linked discipline, and "three strikes" requirements. (*See* FAC, ¶ 84–85, 89, 185–86, 188, 191); *Brandon v. Bd. of Educ. of the City of Chi.*, 384 F. Supp. 3d 781, 788–89 (N.D. Ill. 2019) (holding that ADHD and associated impairments plausibly qualified as disabilities under the ADA at the pleading stage).

- **Krystyna Ellew.** severe mental health episode; confinement and threats, including being confined by Moseley and threatened with police involvement; coerced treatment decisions; exclusion from travel because of mental health. (*See* FAC, ¶¶ 90, 217, 220–21, 242); *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 737–38 (9th Cir. 2021) (Exclusion from participation in an educational program based on a mental health condition plausibly states a claim under the Rehabilitation Act at the pleading stage).

- **Mary Ferrito.** anxiety, panic attacks, and insomnia requiring medication and therapy provided through University channels; compelled disclosures of private mental health information; differential treatment tied to her condition. (*See* FAC, ¶¶ 101, 216, 243); see *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1062–63 (7th Cir. 2014) (Anxiety and related mental health conditions qualify as disabilities under the Rehabilitation Act and ADA framework).

- **Tessa Grady.** panic attacks, anxiety, and insomnia requiring medication and therapy; targeted based on actual or perceived disability, including Moseley, suggesting ADHD testing, and thereafter treating her differently. (*See* FAC, ¶¶ 76, 91, 101, 194); *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172–73 (7th Cir. 2013) (Episodic conditions and perceived impairments may qualify as disabilities under the ADA and Rehabilitation Act framework at the pleading stage).

- **Alexis Duckett.** pressured to take prescription medication against her wishes; denied a medical withdrawal following concussions and related injuries, resulting in loss of academic progress and continued harm. (*See* FAC, ¶¶ 221, 244); *Schoper v. Bd. of Trs. of W. Ill. Univ.*, 995 F.3d 820, 826–28 (7th Cir. 2021) (Denial of reasonable modification and adverse academic consequences tied to medical conditions plausibly state claims under the Rehabilitation Act at the pleading stage).

### d. Defendants' Rule 8 Authorities Do Not Fit the Pleaded Facts.

Defendants' Rule 8 cases do not work here. Defendants rely on *Tenity* and *Boykin* to argue Plaintiffs plead only conclusory allegations "without more." (Defs' Mot. at p. 73). In *Tenity v. Geren*, 776 F. Supp. 2d 725, 742 (N.D. Ill. 2011), the court addressed a workplace personality conflict and held that generalized stress and depression untethered to functional limitation or treatment did not constitute a disability. Similarly, in *Boykin v. Ill. Dep't of Juv. Just.*, 2025 WL 640050, at 14 (N.D. Ill. Feb. 27, 2025), the court found conclusory assertions devoid of factual detail. Here, by contrast, the Plaintiffs plead diagnosed or treated conditions, disclosure, functional limitation, and disability-linked consequences. Defendants' attempt to recharacterize those allegations as ordinary stress or discretionary coaching decisions improperly resolves factual disputes and draws defense-favorable inferences at Rule 12.

Plaintiffs plausibly allege qualifying disabilities, Defendants' knowledge, and disability-linked adverse treatment and exclusion. Defendants' Rule 8 challenge therefore fails.

3. **Plaintiffs Plausibly Allege a Disparate Impact Claim Under the Rehabilitation Act.**

Defendants also argue that Plaintiffs' disparate impact claim must be dismissed because the Complaint fails to identify a facially neutral policy, practice, program, or custom and because Plaintiffs did not plead statistical evidence. (Defs' Mot. at pp. 74–76). Rule 12 requires neither. *See Bemke v. Pechacek,* 2024 WL 3443792, at 6–7 (W.D. Wis. July 17, 2024) (holding that at the pleading stage, a disparate impact claim need not be supported by statistical evidence and may proceed based on plausible allegations that a facially neutral practice operated to burden a protected group) (citing *Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729, 737–38 (9th Cir. 2021)). Plaintiffs allege program-wide participation and discipline that, though neutral in form, operated predictably to burden athletes with disabilities. (*See* FAC, ¶ 225).

a. **The First Amended Complaint Alleges Program-Wide Practices, Not Isolated Discretionary Acts.**

Plaintiffs allege recurring, program-level practices governing participation, travel, discipline, and mental-health compliance. Those practices were neutral in form because they applied as team rules and expectations, yet Plaintiffs allege they operated in a consistent, recurring pattern that burdened athletes with disabilities. (*See* FAC, ¶ 225). *See Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729, 737–38 (9th Cir. 2021). Plaintiffs support this with concrete examples of how those practices were applied across multiple athletes over time, including:

- conditioning continued participation, travel, and team standing on compliance with coercive mental-health-related demands rather than individualized medical judgment (*See* FAC, ¶¶ 83–90, 192, 220–21);

- directing or pressuring medication decisions and interfering with treatment as a standard response to athletes' mental health conditions (*See* FAC, ¶¶ 84–85, 188, 217, 221); imposing uniform disciplinary mechanisms and "expectations" plans that predictably penalized athletes whose disabilities affected compliance (*See* FAC, ¶¶ 89, 186, 191, 213–14); and

41

- applying these practices repeatedly to multiple athletes over time within the same Division I program (*See* FAC, ¶¶ 170–210, 225).

Those allegations reflect how the program was run. They are not limited to a single discretionary decision affecting a single athlete. *See Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729, 737–38 (9th Cir. 2021) ("[A] plaintiff may establish a policy or practice through evidence of repeated acts or a pattern of conduct, even in the absence of a formally adopted rule.").

Defendants contend Plaintiffs rely on "generalized policies, individual decisions, or alleged personal biases of one person," which Defendants argue cannot qualify as a policy, practice, program, or custom. (Defs' Mot. at p. 75 (citing *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716–17 (7th Cir. 2012), and *Aberman v. Bd. of Educ.*, 242 F. Supp. 3d 672, 685 (N.D. Ill. 2017))). That framing strips the pleading of its core allegations about how the women's basketball program operated as a system when athletes presented mental health and neurodevelopmental conditions.

### b. The First Amended Complaint Identifies a Facially Neutral Practice Sufficient at the Pleading Stage.

As Defendants acknowledge, a disparate impact claim requires identification of a facially neutral policy that falls more harshly on one group than another (Defs' Mot. at p. 74) (citing *Bemke v. Pechacek*, 2024 WL 3443792, at 6–7 (W.D. Wis. July 17, 2024), and *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003))). Plaintiffs allege such a practice here: the program's participation and discipline requirements, along with mental health compliance expectations, were applied across the team but operated in a manner that produced disproportionate exclusion and adverse consequences for athletes with disabilities. (*See* FAC, ¶ 225; *see also* FAC ¶¶ 83–90, 186–91, 213–14).

A disparate impact claim is not confined to challenges to a written rule. Plaintiffs further allege an identifiable pattern of conduct governing participation and discipline within the program

that operated at a program-wide level, rather than through isolated discretionary decisions. *See Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021) (recognizing that systemic practices, even if unwritten, may support a disparate impact claim at the pleading stage). As alleged, that pattern plausibly supports disparate impact. (*See* FAC, ¶ 225).

### c.   Defendants Improperly Demand Statistical Proof at Rule 12.

Defendants' demand for statistical proof is premature. Defendants argue Plaintiffs must plead "statistical or similar evidence" to show significant adverse impact and cite *Carson v. Lake County*, 865 F.3d 526, 536 (7th Cir. 2017), along with *Aberman.* (Defs' Mot. at p. 75). *Carson* is an Age Discrimination in Employment Act case addressing evidentiary proof, not pleading standards under Section 504. Defendants' reliance on an employment evidentiary framework does not convert Rule 12 into a summary judgment proceeding. *See Bemke v. Pechacek*, 2024 WL 3443792, at 6–7 (W.D. Wis. July 17, 2024).

Plaintiffs allege facially neutral program practices, allege those practices fell more harshly on athletes with disabilities than on non-disabled teammates and participants in other Division I sports, and support that claim with detailed factual allegations describing both the practices and their effects. (*See* FAC, ¶ 225; *see also* FAC, ¶¶ 83–90, 170–210). At the pleading stage, Plaintiffs need only allege facts permitting a reasonable inference of disproportionate burden; statistical proof is an evidentiary issue reserved for later stages of the case. *See Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021); *Bemke v. Pechacek,* 2024 WL 3443792, at **6–7 (W.D. Wis. July 17, 2024).

### d.   Defendants' Authorities Are Distinguishable from the Practices Alleged Here.

Defendants cite *Puffer* and *Aberman* for the proposition that allegations of individual decisions or personal bias are insufficient to state a disparate impact claim. (Defs' Mot. at p. 75).

In those cases, the pleadings challenged discrete employment decisions or alleged bias affecting individual actions, without identifying any broader policy, practice, or program that produced a group-level impact. *Puffer*, 675 F.3d at 716–17; *Aberman*, 242 F. Supp. 3d at 685.

Plaintiffs, however, plead consistent, program-wide practices governing participation, discipline, and mental-health compliance within a Division I athletics program, and plead that those practices disproportionately burdened athletes with disabilities. (*See* FAC ¶ 225; *see also* FAC, ¶¶ 83–90, 186–91, 213–14).

Defendants' out-of-circuit authority does not alter that conclusion. (Defs' Mot. at p. 75) (citing *M.S. v. Fairfax Cty. Pub. Sch. Bd.*, 2025 WL 665543, at *5, 11 (E.D. Va. Feb. 28, 2025) (dismissing where the plaintiff failed to identify a policy or practice with a disparate effect)). Plaintiffs have done so here.

### 4. Defendants' Argument as to Damages is Irrelevant To a Motion to Dismiss.

Defendants argue Plaintiffs' Rehabilitation Act claim must be dismissed to the extent it seeks damages for emotional distress and punitive damages. (Defs' Mot. at pp. 76–77 (citing *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022), and *Barnes v. Gorman*, 536 U.S. 181 (2002))). Plaintiffs do not dispute that Rehabilitation Act damages have been limited by prior holdings. But Defendants' argument does not justify wholesale dismissal of the claim.

That position improperly conflates limits on certain categories of damages with dismissal of the cause of action. Even where emotional distress and punitive damages are unavailable, plaintiffs who plausibly plead a violation of the Rehabilitation Act may still pursue declaratory

relief, injunctive relief, and economic compensatory damages.[8] Those remedies remain available here, and Defendants do not argue otherwise.

Nor does Defendants' remedies argument support dismissal on immunity grounds. A state entity that accepts federal funds waives Eleventh Amendment immunity for Section 504 claims. *See* 42 U.S.C. § 2000d-7(a)(1). That abrogation applies to suits seeking both damages and equitable relief and operates as a condition on the receipt of federal funds. Courts have repeatedly held that, by accepting such funds, state entities waive Eleventh Amendment immunity for Rehabilitation Act claims as a matter of law. *See Lane v. Peña*, 518 U.S. 187, 200 (1996); *Stanley v. Litscher*, 213 F.3d 340, 344 (7th Cir. 2000); *Koslow v. Commonwealth of Pa.*, 302 F.3d 161, 171–72 (3d Cir. 2002). Here, the Rehabilitation Act claim is asserted solely against the Board of Regents, a recipient of federal funds, and not against any individual defendants. No immunity defense warrants dismissal.

## IX.    PLAINTIFFS PLEAD DOHERTY'S PERSONAL INVOLVEMENT.

### A. Defendants Misstate The Rule 12 Standard Governing Personal Involvement.

Defendants try to erase Doherty from this case—asserting that Plaintiffs plead only supervisory status, generalized awareness, or vicarious liability. (Defs' Mot. at p. 79). That framing ignores the governing Rule 12 standard and mischaracterizes the pleaded facts.

Defendants are correct that § 1983 does not permit respondeat superior liability. *See Burks v. Raemisch*, 555 F.3d 592, 593–94 (7th Cir. 2009). That settled rule, however, does not require dismissal where a complaint plausibly alleges a defendant's personal knowledge of ongoing constitutional violations and deliberate indifference or affirmative participation in those violations.

---

[8] *See, e.g.*, *Barnes v. Gorman*, 536 U.S. 181, 187 (2002) (recognizing availability of equitable relief and compensatory damages under Spending Clause statutes); *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 219–20 (2022) (distinguishing contract-like damages from equitable and economic remedies).

*See Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Defendants' brief collapses this distinction by treating § 1983 personal-involvement cases as requiring direct, hands-on misconduct in every case. (Defs' Mot. at pp. 79–80).

### B. The Complaint Pleads Extensive, Non-Conclusory Facts Establishing Doherty's Personal Involvement.

Plaintiffs allege personal involvement the ordinary way: notice, authority, and deliberate indifference. Doherty was repeatedly told—by players and parents—about psychological abuse, discrimination against disabled athletes, and resulting mental-health crises through direct reports. (*See* FAC, ¶¶ 12, 17, 81, 108–10, 135, 140–42, 196). Next, Doherty knew the pattern was not isolated: multiple athletes left the program citing the same misconduct and mental-health harm. (*See* FAC, ¶¶ 121–24, 152, 198). And after documented incidents, Doherty remained involved in program decisions affecting players—yet did not intervene, remediate, or stop the conduct despite his authority to do so. (*See* FAC, ¶¶ 121–24, 135, 140–42, 152, 196). This is not "supervision." It is knowing inaction in the face of ongoing violations.

Defendants call these allegations "vague" or "conclusory" by imposing a Rule 12 demand for evidentiary detail. (Defs' Mot. at pp. 84–85). Notice pleading does not require plaintiffs to plead internal communications or proof of intervention mechanisms. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010). Allegations that an official received complaints, knew of ongoing harm, had authority to act, and failed to do so plausibly plead personal involvement. *See Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015) (§ 1983 deliberate-indifference case holding that notice of ongoing harm and failure to intervene states a claim at the pleading stage).

Defendants' cases about after-the-fact grievances are inapposite. (Defs' Mot. at pp. 80–82). Unlike those cases, Plaintiffs do not allege a one-off complaint or a single letter received and

46

filed away. They allege repeated notice during the misconduct—and a knowing choice to let it continue.

Finally, Defendants attempt to minimize a pleaded pattern of deliberate indifference to isolated, time-barred acts. (Defs' Mot. at pp. 81–82). Rule 12 does not allow that reframing. Section 1983 still reaches an official's personal knowledge of ongoing constitutional violations and deliberate indifference to those violations over time. *See Burks v. Raemisch*, 555 F.3d 592, 593–94 (7th Cir. 2009); *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001). Whether Doherty's repeated notice, authority to act, and failure to intervene amounted to deliberate indifference presents a fact-bound inquiry that cannot be resolved at the pleading stage. On these allegations, the claim proceeds.

### C. Plaintiffs Adequately Plead an Equal Protection Claim As to Doherty.

#### 1. Defendants Misstate the Equal Protection Pleading Standard.

Defendants next contend that Plaintiffs have "pleaded themselves out" of an Equal Protection claim by asserting facts that, in Defendants' view, demonstrate a rational basis for the challenged conduct. (Defs' Mot. at pp. 44–49). That argument rests on a misapplication of Equal Protection law and an improper rejection of Plaintiffs' well-pleaded factual allegations at the Rule 12 stage.

At the outset, Defendants' central legal error is applying the wrong Equal Protection framework. In their brief, Defendants argue that because disability-based Equal Protection claims are reviewed under rational-basis scrutiny, Plaintiffs must plead facts negating any conceivable rational justification for Defendants' conduct. (Defs' Mot. at pp. 47–48) (citing *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992), and *Flying J Inc. v. City of New Haven*, 549 F.3d

538, 545–48 (7th Cir. 2008)). That is not the pleading burden applicable to class-based Equal Protection claims.

The authorities Defendants rely on address equal protection "class-of-one" theories, where plaintiffs must allege irrational differential treatment compared to similarly situated individuals without any conceivable rational basis. *See Flying J Inc. v. City of New Haven*, 549 F.3d 538, 545–48 (7th Cir. 2008) (addressing class-of-one Equal Protection claims requiring allegations of irrational differential treatment of similarly situated comparators); *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992). Plaintiffs do not bring a class-of-one claim. They allege discrimination based on disability, a recognized class for Equal Protection purposes. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–42 (1985). Although disability classifications are evaluated under rational-basis review, plaintiffs alleging disability discrimination are not required at the pleading stage to anticipate and negate every hypothetical justification Defendants may later assert. *See Chavez v. Ill. State Police*, 251 F.3d 612, 635 (7th Cir. 2001). Defendants' attempt to import class-of-one pleading requirements into a class-based claim misstates the law.

### 2. The Complaint Plausibly Alleges Disability-Based Differential Treatment and Deliberate Indifference by Doherty.

Under the correct standard, Plaintiffs must plausibly allege intentional differential treatment based on disability, or deliberate indifference to known discriminatory treatment. *See Bohen v. City of East Chicago*, 799 F.2d 1180, 1187 (7th Cir. 1986). The First Amended Complaint does so.

The Complaint alleges Doherty knew disabled athletes were treated differently from their non-disabled peers in concrete and identifiable ways. Plaintiffs allege Doherty was aware that disabled athletes were required to disclose private medical and mental-health information as a

condition of continued participation, were subjected to heightened monitoring and scrutiny tied directly to their disabilities and were disciplined or restricted following disability-related mental-health disclosures in ways not imposed on other athletes. (*See* FAC, ¶¶ 181–87, 189–95.) Plaintiffs further allege these measures were triggered by disability status itself rather than neutral performance criteria. (*See* FAC, ¶¶ 182–84, 190–92.) Taken together, these allegations plausibly plead materially different treatment based on disability.

The Complaint also alleges Doherty knew this differential treatment caused serious harm. Plaintiffs allege he was aware of worsening mental-health symptoms, repeated crises, and athlete departures linked to the discriminatory treatment, yet failed to intervene despite his authority to do so. (*See* FAC, ¶¶ 121–24, 152, 196, 198.) Plaintiffs further allege Doherty's continued inaction, after repeated notice, functioned as ratification of the discriminatory conduct. (*See* FAC, ¶¶ 152, 196, 198.) At the pleading stage, knowledge combined with deliberate indifference plausibly alleges discriminatory intent. *See Bohen v. City of East Chicago*, 799 F.2d 1180, 1187 (7th Cir. 1986).[9]

In response, Defendants' contrary position depends on drawing defense-favorable inferences from the facts. In their brief, Defendants recharacterize Plaintiffs' allegations as benign or rational responses to mental-health concerns and argue those characterizations defeat Equal Protection as a matter of law. (Defs' Mot. at pp. 48–49). Rule 12 does not permit courts to credit such alternative explanations or resolve factual disputes at the pleading stage. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *See McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011).

---

[9] Discriminatory intent may be plausibly alleged through knowledge of ongoing discriminatory conduct combined with deliberate indifference or acquiescence, particularly at the pleading stage. *See Bohen v. City of East Chicago*, 799 F.2d 1180, 1187 (7th Cir. 1986); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Defendants also argue that Equal Protection does not impose a duty to accommodate disabilities. (Defs' Mot. at pp. 84–85). Plaintiffs do not assert a failure-to-accommodate theory under Equal Protection. They allege Doherty knowingly permitted disabled athletes to be treated differently and more harshly because of their disabilities. Defendants' attempt to collapse those distinct theories improperly reframes Plaintiffs' claim.

Taken as true, the Complaint plausibly alleges disability-based differential treatment, Doherty's knowledge of that treatment, and his deliberate indifference to its continuation. Defendants' Equal Protection argument therefore fails at the pleading stage.

### D. Plaintiffs Adequately Plead A Substantive Due Process Claim.

#### 1. Defendants Misstate the Rule 12 Inquiry and Recast a Fact-Bound Standard as a Pleading Bar.

Defendants argue that the substantive due process claim fails because Plaintiffs have not alleged government action "so 'arbitrary and irrational as to shock the conscience.'" (Defs' Mot. at p. 15). In addition, they further contend that executive action is actionable only when the allegations demonstrate "outrageous, conscience-shocking behavior," and assert that Plaintiffs' allegations do not rise to that level. (Defs' Mot. at pp. 24–25). That is a merits conclusion—not a pleading rule. Whether conduct shocks the conscience is context-dependent and fact-bound—not an easy way to defeat a complaint.

At the pleading stage, however, the Court does not decide whether conduct ultimately shocks the conscience. The question is whether the Complaint plausibly alleges conduct that, if proven, could satisfy that standard when evaluated in context. *See County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998); *Robbin v. City of Berwyn*, 108 F.4th 586, 589–91 (7th Cir. 2024). Because whether executive conduct is conscience-shocking turns on the totality of the

circumstances, including foreseeability of harm and the defendant's state of mind, dismissal at the pleading stage is inappropriate except in the clearest cases. *See Lewis*, 523 U.S. at 850.

So, Defendants cannot obtain dismissal by minimizing what was pleaded—coercion and psychological harm, among other things, or by asking the Court to accept their softer narrative. [10]

### 2. The Complaint Plausibly Alleges Executive Action Marked by Deliberate Indifference to Serious Harm.

Here, the Complaint plausibly alleges a substantive due process violation by describing executive action in which Doherty knowingly disregarded ongoing, serious psychological harm to student-athletes. *See County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998); *See Robbin v. City of Berwyn*, 108 F.4th 586, 589–91 (7th Cir. 2024); s*ee also* FAC, ¶¶ 12, 17, 81, 108–10, 121–24, 135, 140–42, 152, 196, 198).

First, Plaintiffs allege persistent psychological abuse and coercive practices in a setting marked by a significant power imbalance, including pressure surrounding mental-health disclosures and continued team participation. (*See* FAC, ¶¶ 81, 108–10, 135, 140–42**).** The allegations also describe repeated notice to Doherty of serious psychological harm, including mental-health crises, self-harm risks, and multiple departures from the program tied to the same misconduct. (*See* FAC, ¶¶ 12, 17, 121–24, 152, 198). These allegations place Doherty on notice that the harm was systemic and escalating.

Despite this notice, Plaintiffs allege Doherty had authority to intervene and was involved in decisions affecting athletes following documented mental-health incidents yet failed to take corrective action. (*See* FAC, ¶¶ 135, 140–42, 152, 196). Finally, the Complaint alleges that

---

[10] Defendants' framing asks the Court to resolve factual disputes and credit a defense-favorable narrative over Plaintiffs' pleaded facts, which Rule 12 prohibits. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *See McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011).

Doherty's continued inaction, despite repeated notice of serious harm, functioned as ratification and allowed the conduct to continue. (*See* FAC, ¶¶ 152, 196, 198). The response brief attempts to reframe these allegations as isolated incidents, discretionary coaching decisions, or, at most, negligence. (Defs' Mot. at pp. 24–25). That characterization cannot be credited at the pleading stage. Plaintiffs allege a continuing course of conduct, repeated notice of serious harm, and Doherty's knowing failure to intervene despite authority to do so. Accepting those allegations as true, the Complaint plausibly alleges executive action that may shock the conscience when evaluated in context. *See County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998); *Armstrong v. Squadrito*, 152 F.3d 564, 577–78 (7th Cir. 1998).

**E.  Doherty Is Not Entitled To Qualified Immunity.**

### 1. Defendants Misstate the Qualified Immunity Inquiry at Rule 12.

Defendants argue Doherty is entitled to qualified immunity because the Complaint purportedly fails to allege a violation of clearly established constitutional rights and because Doherty's conduct was objectively reasonable under the circumstances. (Defs' Mot. at pp. 50–53). That argument misstates the qualified immunity inquiry at the pleading stage and improperly resolves factual disputes in Defendants' favor.

Qualified immunity protects officials only where the complaint fails to plausibly allege a constitutional violation or where the right at issue was not clearly established at the time of the conduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). At Rule 12, courts must accept the plaintiff's version of the facts as true and determine whether those facts plausibly allege a violation of clearly established law. *See McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). Defendants may not obtain dismissal by disputing Plaintiffs' factual allegations or by recasting the conduct as reasonable as a matter of law. *See Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001).

**2. The Complaint Plausibly Alleges Violations of Clearly Established Constitutional Rights.**

The rights at issue were clearly established. As alleged, the Complaint shows Doherty violated clearly established constitutional rights through his knowledge of ongoing constitutional violations and deliberate indifference to escalating harm. Long before the events at issue, it was clearly established that supervisory officials may be held liable under § 1983 where they know of ongoing constitutional violations and fail to intervene despite authority to do so. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *See Perez v. Fenoglio*, 792 F.3d 768, 781–82 (7th Cir. 2015).

It was also clearly established that disability-based discrimination by state actors violates the Equal Protection Clause. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–42 (1985). It was likewise clearly established that executive action involving deliberate indifference to known and serious harm may violate substantive due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998); *See Armstrong v. Squadrito*, 152 F.3d 564, 577–78 (7th Cir. 1998).

The Complaint alleges Doherty had repeated notice of ongoing constitutional violations, including disability-based discrimination and escalating psychological harm, yet failed to intervene despite authority to do so. (*See* FAC, ¶¶ 12, 17, 121–24, 152, 196, 198). First, the allegations show Doherty received direct reports from athletes and parents describing psychological abuse and discriminatory treatment tied to disability. (*See* FAC, ¶¶ 12, 17, 108–10). Next, the allegations reflect that Doherty knew multiple athletes experienced mental-health crises and left the program citing the same conduct, placing him on notice that the harm was not isolated. (*See* FAC, ¶¶ 121–24, 152). Plaintiffs further allege Doherty was aware of, and involved in, decisions affecting athletes following documented mental-health incidents, yet failed to take

corrective action. (*See* FAC, ¶¶ 135, 140–42). Finally, despite this repeated notice and his authority to intervene, Doherty took no action and allowed the conduct to continue. (*See* FAC, ¶¶ 152, 196, 198). Accepting these allegations as true, Doherty's knowing inaction in the face of foreseeable and escalating harm plausibly alleges a violation of clearly established constitutional rights.

Defendants' qualified immunity argument depends on rejecting Plaintiffs' facts and adopting Defendants' version of events. (Defs' Mot. at pp. 52–53). That is not permitted at the pleading stage. *See McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011); *See Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001). Qualified immunity cannot be resolved on these pleadings.

## X.    <u>CONCLUSION</u>

Defendants ask the Court to choose their version of events over the Complaint. Rule 12 does not allow that move, and Plaintiffs' well-pleaded allegations plausibly state claims for relief. The Motion to Dismiss should be denied.

Respectfully submitted,

Dated: January 22, 2026

**DOLAN LAW OFFICES, P.C.**
*Electronically Signed by Martin A. Dolan*
Martin A. Dolan
10 South LaSalle Street, Suite 3702
Chicago, Illinois 60603
(312)676-7600
mdolan@dolanlegal.com

**FUHRMAN & DODGE, S.C.**
*Electronically Signed by Noe J. Rincon*
Noe J. Rincon

54

State Bar No. 1124893
Christopher J. Dodge
State Bar No. 1011530
Jeanne M. Armstrong
State Bar No. 1021451
Fuhrman & Dodge S.C.
6405 Century Ave. Ste. 101
Middleton, WI 53562
Phone: 608-327-4200
nrincon@fuhrmandodge.com
cdodge@fuhrmandodge.com
jarmstrong@fuhrmandodge.com

*Counsel for Plaintiffs*

4908-5814-1566, v. 2